UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LANCE S. DIAMOND,

          Plaintiff,                       **MEMORANDUM & ORDER**
                                                  12-CV-5559 (RRM) (VVP)

     - against -

LOCAL 807 LABOR-MANAGEMENT
PENSION FUND, its Trustees, JOHN
SULLIVAN, ANTHONY STORZ, LUIS
HERRERA, JOHN ZAK, ANTHONY
ZAPULLA, and ALLEN SWERDLICK, and its
Fund Administrator, ALFRED FERNANDEZ,

          Defendants.
-----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Lance Diamond originally commenced this action in the United States District

Court for the Southern District of New York, alleging multiple violations of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* (*See* Compl. (Doc. No.

1).)  On November 9, 2012, the case was transferred to this Court.  (Doc. No. 6.)  On March 3,

2013, plaintiff filed an amended complaint alleging causes of action under ERISA against

defendants for failing to adhere to the instruments governing plaintiff's benefits plan, failing to

act solely in the interest of the participants and beneficiaries of the benefits plan, and failing to

make reasonable efforts to remedy those breaches of fiduciary duty.  (*See* Am. Compl. (Doc. No.

25).)  The amended complaint also alleged that defendant Fernandez improperly discontinued

plaintiff's pension benefits in retaliation for conduct protected under ERISA, and sought

statutory penalties for defendants' failure to produce certain documents plaintiff requested.  (*Id.*)

      Before the Court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim.  (*See* Doc. Nos. 30–32.)  For the reasons that follow, the motion is granted.

## BACKGROUND[1]

Defendants are fiduciaries who administer a pension plan ("the Plan") for qualifying employees working under collective bargaining agreements between Truck Drivers Local 807IBT of Long Island City, New York, and their employers.  (Am. Compl. ¶ 4.)  The Plan is an "employee pension benefit plan" and "pension plan" as defined by ERISA.  (*Id.* ¶¶ 7–8.)  Both the Plan and its associated pension fund ("the Fund") are administered in accordance with an "Agreement and Declaration of Trust" between Local 807IBT and an association comprised of employers who are parties to various collective bargaining agreements.  (*Id.* ¶ 6.)

Plaintiff, who is over sixty-five years of age, was employed by defendants as a "Controller" of the Fund from January 1997 through May 2005.  (*Id.* ¶¶ 3, 16.)  Plaintiff reported directly to defendant Fernandez, the administrator of the Fund.  (*Id.* ¶ 32.)  As an employee of the Fund, plaintiff was eligible for and received benefits under the Plan.  (*Id.* ¶¶ 17, 19.)  Between 2000 and 2005, plaintiff repeatedly cautioned Fernandez that the Plan's funding was threatened and recommended several cost-saving measures.  (*Id.* ¶ 33.)  Fernandez did not follow plaintiff's advice and grew aggravated when plaintiff continued to make suggestions regarding funding issues.  (*Id.* ¶ 34.)  Fernandez eventually terminated plaintiff in May 2005.  (*Id.* ¶ 36.)  Believing that he had been wrongfully terminated in retaliation for his attempts to protect the

---

[1] At this stage, the Court's review is limited to facts stated on the face of the amended complaint; facts found in documents attached to the amended complaint, incorporated in the amended complaint, or integral to the claims alleged; and matters of which the Court may take judicial notice. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).  The Court takes all factual allegations in the complaint as true and draws all reasonable inferences in favor of the non-movant. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Sharkey v. Quarantillo*, 541 F.3d 75, 82–83 (2d Cir. 2008) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Fund, plaintiff accused Fernandez of violating the law. (*Id.* ¶¶ 35, 38.) These allegations resulted in both parties retaining legal counsel.[2] (*Id.* ¶ 37.)

On January 9, 2012, plaintiff accepted a consulting position with "the Puerto Rican Family Institute, Inc. . . . , a non-profit, multi-program family[-]oriented mental health and human service agency." (Am. Compl. ¶ 24.) At that time, plaintiff was eligible to receive pension benefits under the Plan. (*Id.*) With reference to subsequent employment by Plan participants, however, the Plan provides that

> If the Participant has attained Normal Retirement Age, his monthly benefit shall be suspended for any month in which he worked or was paid for at least 40 hours in Totally Disqualifying Employment. "Totally Disqualifying Employment" means employment or self-employment that is (A) in an Industry Covered by the Plan when the Participant's pension payments began, and (B) in a geographic area covered by the Plan when the Participant's pension began; and (C) in any occupation in which the Participant worked under the Plan at any time or (D) any occupation covered by the Plan at the time the Participant's pension payments began.[3]

(*Id.* ¶ 22; *see also* Aff. of Alfred Fernandez ("Fernandez Aff.") (Doc. No. 30-1), Ex. A § 6.7(b)(i).) The Plan defines "Normal Retirement Age" as "age 65, or, if later, the age of the Participant on the fifth anniversary of his participation." (Fernandez Aff., Ex. A § 1.12.) An "Industry Covered by the Plan" means "the trucking, moving and general warehousing industries and any other industries in which employees covered by the Plan were employed when the participant's pension began . . . ." (Am. Compl. ¶ 23; *see also* Fernandez Aff., Ex. A § 6.7(b)(ii).) On June 14, 2012, defendants suspended plaintiff's benefit payments under the Plan, informing plaintiff that his employment with the Puerto Rican Family Institute constituted "Disqualifying Employment." (Am. Compl. ¶ 27–29.) Specifically, defendants told plaintiff

---

[2] The amended complaint contains no allegations concerning the outcome of this dispute.

[3] The terms of the Plan are incorporated by reference in the amended complaint, (*see* Am. Compl. ¶ 1), and therefore may be considered by the Court on this motion. *See Allen*, 945 F.2d at 44.

that, "[w]hile [he] may be working in a different industry," his current position encompassed

"the same duties and occupation" as his prior position, which would render him ineligible for

benefits under their interpretation of the Plan.  (*Id.* ¶ 28.)

Under such circumstances, the Plan provides that "[a] Participant shall be entitled to a

review of a determination suspending his benefits by written request filed with the Trustees

within 180 days of the notice of suspension."  (Fernandez Aff., Ex. A § 6.7(e).)  The Plan also

outlines the procedure for any such review, which in relevant part, provides as follows:[4]

> A claimant may request a formal review by the Trustees of the Fund Office's denial of his or her claim for benefits.  […]  [T]he claimant and/or the claimant's authorized representative may review any documents pertinent to the Fund Office's decision and may submit written comments.
>
> The Trustees will review their original decision and will advise the claimant in writing of their decision on review.  The Trustees' decision on review will be communicated in writing and will contain the specific reason(s) for the decision.
>
> […]
>
> The Trustees shall be the sole judges of the standard of proof required in any case.  The Trustees have discretion to apply and interpret the rules of the Fund.  Furthermore, the Trustees have sole authority and discretion to determine whether an individual is eligible for benefits under the Plan and the amount of benefits, if any to which an individual is entitled.  The Trustees' determination with respect to the application and interpretation of any of the provisions of the Fund's rules shall be final and binding on all parties.

(*Id.* § 6.4.)

Following the suspension of his benefits, plaintiff submitted a request for review by the

Plan's trustees.[5]  (*See* Certification of Richard S. Meisner ("Meisner Aff.") (Doc. No. 31-1), Ex.

---

[4] By its terms, section 6.4 of the Plan outlines the review procedure for a denial of an *application* for benefits.  (*See* Fernandez Aff., Ex. A § 6.4.)  However, the section pertaining to a suspension of benefits provides that "[t]he same right of review set forth in Section 6.4 shall apply, under the same terms, to a determination by or on behalf of the Pension Fund that contemplated employment will be disqualifying."  (*Id.*, Ex. A § 6.7(e).)

[5] This information was omitted from plaintiff's amended complaint.  It was, however, included in a letter plaintiff submitted as an exhibit to a declaration in opposition to defendants' motion.  On a motion to dismiss, the Court may consider extrinsic documents to which the amended complaint "make[s] a clear, definite and substantial reference."

D.) Plaintiff's case was scheduled to be considered during a meeting of the Board of Trustees on September 11, 2012, at which plaintiff was entitled to appear personally. (*See id.*) However, on July 30, 2012, plaintiff withdrew his request for review. (*Id.*) In the letter withdrawing his request, plaintiff sought to "reserve[] his right to reinstate his appeal for benefits or utilize the administrative claim procedure at a later date" while also indicating his intent to "seek reinstatement of his pension benefit in Federal Court without exhausting the administrative appeal process." (*Id.*) This action followed.

## DISCUSSION

Plaintiff alleges several violations under ERISA. First, plaintiff alleges that defendants violated their fiduciary duties under ERISA by failing to adhere to the instruments governing the Plan, failing to act solely in the interest of the participants and beneficiaries of the Plan, and neglecting to make reasonable efforts to remedy those breaches. (*See* Am. Compl. ¶¶ 48–68.) Second, plaintiff alleges that Fernandez improperly suspended plaintiff's benefits under the Plan in retaliation for plaintiff's challenge to his 2005 termination. (*Id.* ¶¶ 69–71.) Finally, plaintiff alleges that defendants' failure to produce certain documents entitles him to statutory penalties under ERISA. (*Id.* ¶¶ 72–75.)

Plaintiff also seeks several forms of relief. As to defendants' alleged breaches of fiduciary duty, plaintiff seeks an injunction or declaratory judgment compelling defendants to operate the Plan in accordance with the Plan documents, as well as an award of all benefits not provided to plaintiff, plus interest from the date of nonpayment, costs, and attorneys' fees. (*Id.* at

---

*Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003). Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,'" such that it "renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); *see also Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010). Because the letter is crucial to plaintiff's allegations of exhaustion and futility, (*see* Am. Compl. ¶¶ 46–47), it is properly considered by the Court on this motion.

13–14.)  With regard to defendant Fernandez, plaintiff seeks "to have [d]efendant Fernandez removed as a fiduciary" of the Plan and, again, an award of all benefits not provided, plus interest, costs, and attorneys' fees.  (*Id.* at 14.)  Lastly, plaintiff seeks an order compelling defendants to furnish him with "a copy of each and every document and instrument requested," as well as statutory civil penalties, costs, and attorneys' fees.  (*Id.* at 14–15.)

To withstand defendants' motion to dismiss, the amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The amended complaint need not contain "'detailed factual allegations,'" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## I.    Breaches of Fiduciary Duty (Claims One, Two, and Three)

Plaintiff's first three causes of action are all premised on alleged actions or omissions committed by all defendants as fiduciaries of the Plan.  (*See* Am. Compl. ¶¶ 48–68.) Specifically, plaintiff alleges that defendants breached their duties as fiduciaries by operating the Plan in such a manner as to suspend his benefits.  (Pl.'s Opp'n (Doc. No. 31) at 15–17.)  The parties dispute the statutory basis for these claims.  Plaintiff purports to proceed under section 502(a)(3) of ERISA, which, in relevant part, provides that such an action may be brought

> [B]y a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a)(3).[6]  Defendants, however, insist that "[i]n reality, [p]laintiff is seeking to

recover benefits allegedly due to him under the terms of the plan, a claim only cognizable under

ERISA [s]ection 502(a)(1) . . . ."  (Defs.' Mem. in Supp. (Doc. No. 30-1) at 9.)  According to

defendants, plaintiff's attempt to bring his claims under section 502(a)(3) is an improper gambit

to avoid deferential review of a benefits determination by the trustees of the Plan.[7]  (*Id.* at 15.)

Put another way, defendants urge that by dodging review by the trustees in the first instance,

plaintiff is seeking a heartier bite at the apple in federal court – one with more teeth.

Whatever plaintiff's motivation, although it is true that claims for monetary relief

generally are not available under section 502(a)(3), *see, e.g.*, *Great-West Life & Annuity Ins. Co.*

*v. Knudson*, 534 U.S. 204, 210 (2002), his fiduciary claims in this case are indeed cognizable

under that provision.  "[T]he Supreme Court has indicated that monetary relief is, in fact,

available under [section] 502(a)(3) in certain circumstances."  *D'Iorio v. Winebow, Inc.*, 920 F.

Supp. 2d 313, 320 (E.D.N.Y. 2013) (citing *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880

---

[6] The amended complaint is unclear as to which provision of ERISA ostensibly authorizes this action, citing both sections 502(a)(2) and 502(a)(3).  (*See* Am. Compl. ¶ 13.)  In his opposition, however, plaintiff clarified that he claims only section 502(a)(3) as a basis for relief.  (Pl.'s Opp'n at 7 & n.1.)  Indeed, plaintiff could not bring this action under section 502(a)(2), for to do so "a plan participant is required to sue 'in a representative capacity on behalf of the plan as a whole.'"  *Mcguigan v. Local 295/Local 851 I.B.T. Employer Grp. Pension Plan*, No. 11-CV-2004 (JG) (MDG), 2011 WL 3421318, at *3 (E.D.N.Y. Aug. 4, 2011) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)).

[7] ERISA itself does not establish a standard of review for administrators' decisions concerning the payment of benefits.  *See Zarringhalam v. United Food & Commercial Workers Int'l Union Local 1500 Welfare Fund*, 906 F. Supp. 2d 140, 155 (E.D.N.Y. 2012).  Nonetheless, "[i]n reviewing a trustee's denial of plan benefits, Supreme Court precedent makes clear that courts must apply a *de novo* standard 'unless the plan provides to the contrary.'"  *Id.* (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008)).  Where a plan "grant[s] 'the administrator or fiduciary *discretionary authority* to determine eligibility for benefits,'" however, "trust principles make a *deferential standard* of review appropriate."  *Glenn*, 554 U.S. at 111 (internal citations and alterations omitted) (emphases in original); *see also Zarringhalam*, 906 F. Supp. 2d at 155.  Under this deferential standard, a "plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'"  *Conkright v. Frommert*, 559 U.S. 506, 521 (2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).  The Plan in this case explicitly provides that "the Trustees have sole authority and discretion to determine whether an individual is eligible for benefits under the Plan and the amount of benefits, if any to which an individual is entitled," and further states that "the Trustees have discretion to apply and interpret the rules of the Fund."  (Fernandez Aff., Ex. A § 6.4.)  Such language would invite deference to the trustees' determinations under the Plan.  *See, e.g.*, *Fuller v. J.P Morgan Chase & Co.*, 423 F.3d 104, 107 (2d Cir. 2005).

(2011)).  In *CIGNA*, employees challenged their employer's conversion of a pension plan from an annuity calculated on the basis of the employees' preretirement salary and length of service to lump sum cash payments based on a defined annual contribution, claiming that the beneficiaries had not received proper notice and that the new plan provided less generous benefits.  *See* 131 S. Ct. at 1870.  The district court ruled for the plaintiffs and ordered relief that included "injunctions requir[ing] the plan administrator to pay to . . . beneficiaries money owed them under the plan as reformed" by the court.  *Id.* at 1880.  Ultimately, the Supreme Court held that "the fact that th[e] relief t[ook] the form of a money payment d[id] not remove it from the category of traditionally equitable relief."  *Id.*

*CIGNA* clarified that "not all relief in the form of a money payment is categorically unavailable in [section] 502(a)(3) actions; a plaintiff proceeding pursuant to that section may, for example, seek a 'surcharge remedy' for a 'loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.'"  *Mcguigan v. Local 295/Local 851 I.B.T. Employer Grp. Pension Plan*, No. 11-CV-2004 (JG) (MDG), 2011 WL 3421318, at *4 n.6 (E.D.N.Y. Aug. 4, 2011) (quoting *CIGNA*, 131 S. Ct. at 1880); *see also Laurent v. PriceWaterhouseCoopers LLP*, No. 06-CV-2280 (JPO), 2013 WL 4028181, at *16 (S.D.N.Y. Aug. 8, 2013) (quoting *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1165 (9th Cir. 2012)) ("Exploring the historic powers of equity courts, *CIGNA* held that 'under appropriate circumstances, [section] 502(a)(3) may authorize three possible equitable remedies: estoppel, reformation, and surcharge.'").  The Court explained that this is so because, traditionally, "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment."  *CIGNA*, 131 S. Ct. at 1880.

In reaching that conclusion, the Court in *CIGNA* focused primarily on the relationship of the parties in the litigation.  Specifically, the Court distinguished *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), which concerned a claim for money damages brought by a beneficiary against a private firm that provided services to the plan's trustee, and *Great-West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204 (2002), which involved a lien sought by a fiduciary against the general assets of a beneficiary, emphasizing that *CIGNA* "concern[ed] a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust)."  *CIGNA*, 131 S. Ct. at 1879 (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253, n.4 (2008); *Varity Corp. v. Howe*, 516 U.S. 489, 496–97 (1996)); *see also D'Iorio*, 920 F. Supp. 2d at 321.  In such a case, the Court said, monetary relief may be available under section 502(a)(3).  *CIGNA*, 131 S. Ct. at 1879–80.  The parties here have a relationship analogous to that in *CIGNA – i.e.* plaintiff is a beneficiary suing the Plan fiduciaries about the terms of Plan.  Following the guidance in *CIGNA*, this Court likewise concludes that monetary compensation may be a permissible component of any equitable relief awarded under section 502(a)(3).  *Accord D'Iorio*, 920 F. Supp. 2d at 321–22.  Consequently, the Court finds that plaintiff's fiduciary claims are cognizable under section 502(a)(3).  This, however, is not the end of the story.

### A.  Exhaustion of Remedies

Defendants also ask the Court to dismiss these claims because ERISA requires plaintiff to exhaust his administrative remedies under the Plan before seeking redress in federal court. (Defs.' Mem. in Supp. at 9–10; Defs.' Reply (Doc. No. 32) at 4–5.)  In response, plaintiff acknowledges the general rule requiring exhaustion, but insists that this case is exempt from that prerequisite.  (Pl.'s Opp'n at 12–20.)  The Court disagrees.  Plaintiff's fiduciary claims must be

dismissed because he failed to exhaust his remedies under the Plan and the need to exhaust cannot be excused.

Under ERISA, following "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied," all covered benefit plans must provide "a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The Second Circuit has consistently "recognized 'the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (quoting *Alfarone v. Bernie Wolff Constr.*, 788 F.2d 76, 79 (2d Cir.), *cert. denied*, 479 U.S. 915 (1986)). Most challenges to a denial of benefits are thus made in accordance with a plan's administrative review procedures, and a failure to exhaust those remedies is an affirmative defense in a federal action, *see Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006), "provid[ing] grounds for dismissal or summary judgment in favor of the opposing party." *Zarringhalam v. United Food & Commercial Workers Int'l Union Local 1500 Welfare Fund*, 906 F. Supp. 2d 140, 152 (E.D.N.Y. 2012) (citing *Quigley v. Citigroup Supp. Plan for Shearson Transfers*, No. 09-CV-8944 (PGG), 2011 WL 1213218, at *7 (S.D.N.Y. Mar. 29, 2011)). Requiring exhaustion serves "the primary purposes" of

> (1) uphold[ing] Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provid[ing] a sufficiently clear record of administrative action if litigation should ensue; and (3) assur[ing] that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102 (2d Cir. 2005) (quoting *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 132–34 (2d Cir. 2001)).

Consonant with these principles, "[c]ourts uniformly require exhaustion for claims based on violations of contractual rights protected by ERISA, such as [a] denial of benefits." *Shamoun v. Bd. of Trustees*, 357 F. Supp. 2d 598, 603 n.3 (E.D.N.Y. 2005). Plaintiff argues, however, that he was not required to exhaust his administrative remedies because he alleges a statutory violation of ERISA under section 502(a)(3). (Pl.'s Opp'n at 12–15.) The Second Circuit has yet to decide whether exhaustion is required for claims alleging violations of the ERISA statute itself. *See Nechis*, 421 F.3d at 102 (stating that the court "need not here decide whether administrative exhaustion is a prerequisite to a statutory ERISA claim"); *De Pace v. Matsushita Elec. Corp. of Am.*, 257 F. Supp. 2d 543, 558 (E.D.N.Y. 2003) ("The Second Circuit has yet to address the specific question of whether exhaustion is required for statutory-based claims under ERISA . . . ."). As a breach of fiduciary duty under ERISA is typically viewed as a statutory claim, whether claims alleging violations of ERISA's statutory protection against breaches of fiduciary duty are subject to the administrative exhaustion requirement is similarly unclear. *See Role v. Johns Hopkins Bayview Med. Ctr.*, No. 06-CV-2475 (DLI) (LB), 2008 WL 465574, at *3 (E.D.N.Y. Feb. 15, 2008) ("The Second Circuit has not addressed the question of whether ERISA fiduciary claims are subject to the administrative exhaustion requirement.").

Nevertheless, there is a distinct trend among the district courts in this circuit. In general, "[d]istrict courts in the Second Circuit have routinely dispensed with the exhaustion prerequisite where plaintiffs allege a statutory ERISA violation," *Nechis*, 421 F.3d at 102 (quoting *De Pace*, 257 F. Supp. 2d at 558), while continuing to require exhaustion for claims alleging violations of the terms of a benefit plan. *See Role*, 2008 WL 465574, at *3 ("[D]istrict courts within this circuit have drawn a distinction between claims relating to violations of the terms of a benefit plan, and claims relating to statutory violations of ERISA, finding that the former, but not the

latter, claims must be administratively exhausted."); *Park v. Trustees of 1199 SEIU Health Care Employees Pension Fund*, 418 F. Supp. 2d 343, 358 (S.D.N.Y. 2005) ("District courts within this Circuit, however, have permitted claims for statutory violations of ERISA even though administrative remedies were not exhausted."); *Shamoun*, 357 F. Supp. 2d at 603 n.3 ("The Second Circuit has yet to address the issue, but courts in this circuit hold that there is no exhaustion requirement for statutory claims under ERISA.").[8]

This Court joins that trend. Declining to require exhaustion where a plaintiff alleges a statutory ERISA violation – as opposed to a violation of the terms of a plan – makes sense, as "statutory interpretation is the province of the judiciary" while "plan fiduciaries may have expertise in interpreting the terms of the plan itself." *De Pace*, 257 F. Supp. 2d at 557 (citing *Amaro v. Cont'l Can Co.*, 724 F.2d 747, 749–50 (9th Cir. 1984)). And although the Second Circuit has yet to rule definitively, it has tacitly permitted district courts to continue applying this distinction in a manner consonant with the principles underlying exhaustion. *See Nechis*, 421 F.3d at 102 (citing *De Pace*, 257 F. Supp. 2d at 558, and declining to decide the question but noting the trend in the district courts). As such, the Court will first determine whether plaintiff's claims allege statutory violations of ERISA or violations of the terms of the Plan.

Whether a claim relates to violations of the ERISA statute or the terms of a plan turns on what the Court is called upon to interpret. *See Am. Med. Ass'n v. United HealthCare Corp.*, No. 00-CV-2800 (LMM), 2007 WL 1771498, at *15 (S.D.N.Y. June 18, 2007), *adhered to on recons.*, 2007 WL 2457358 (S.D.N.Y. Aug. 23, 2007). Thus, it is not dispositive that plaintiff

---

[8] Other circuits have drawn a similar distinction. *See, e.g.*, *Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir. 2006); *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 252 (3d Cir. 2002); *Smith v. Sydnor*, 184 F.3d 356, 364–65 (4th Cir. 1999), *cert. denied*, 528 U.S. 1116 (2000); *Richards v. General Motors Corp.*, 991 F.2d 1227, 1235 (6th Cir. 1993); *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir. 1990); *Amaro v. Cont'l Can Co.*, 724 F.2d 747, 749–50 (9th Cir. 1984). *But see Counts v. Am. Gen. Life and Accident Ins. Co.*, 111 F.3d 105, 109 (11th Cir. 1997); *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996).

casts his claims as statutory violations. "[T]he essence of a cause of action is found in the facts alleged . . . by the plaintiff, not the particular legal theories articulated." *Oneida Indian Nation of New York v. County of Oneida*, 617 F.3d 114, 139 (2d Cir. 2010); *see also D'Iorio*, 920 F. Supp. 2d at 322. In particular, "a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an *ERISA-regulated plan* rather than upon an interpretation and application of *ERISA*." *Am. Med. Ass'n*, 2007 WL 1771498, at *15 (S.D.N.Y. June 18, 2007) (quoting *Smith*, 184 F.3d at 362) (emphasis in original); *cf. Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 322 (S.D.N.Y. 2003) (rejecting the plaintiffs' claim "that the [d]efendants breached their fiduciary duty to administer the [p]lans according to their terms" because the claim was "not independent of the [c]omplaint's primary claim for recalculation of individual benefits for participants in the [p]lans").

As indicated above, plaintiff frames his claims as alleging statutory violations of ERISA. Defendants predictably insist that they do not, maintaining that plaintiff seeks simply to recover benefits he believes are owed under the terms of the Plan. The amended complaint itself specifically alleges that defendants "violated the express terms and conditions of the Pension Plan and the Pension Plan Rules" and, in so doing, breached their "fiduciary duties under [s]ection 404 of ERISA because, at this time, they have knowledge that they are not operating the Pension Plan 'in accordance with the documents and instruments' governing the Pension Plan . . . ." (*See* Am. Compl. ¶ 29, 31.) On their face, these allegations would appear to require the Court to interpret the documents and instruments governing the Plan. Undaunted, plaintiff argues that the suspension of his benefits was so flagrantly violative of the terms of the Plan that no interpretation is required. Plaintiff maintains that defendants' decision to suspend his benefits so plainly contravened the terms of the Plan that it constituted a direct violation of the statutory

requirement that the trustees discharge their duties "in accordance with the documents and instruments governing the plan," (Pl.'s Opp'n at 15–17 (quoting 29 U.S.C. § 1104(a)(1)(d))), and cannot be considered an exercise of reasoned interpretation or discretion.[9]

This somewhat circular logic fails to obscure the true nature of plaintiff's claims. Although plaintiff insists that "[t]his is not a situation where there is a dispute over the fiduciaries' interpretation of the Plan," (Pl.'s Opp'n at 17), that is *precisely* the issue presented in this case. Since the sole statutory violation alleged by plaintiff is a breach of fiduciary duty premised on the trustees' suspension of his benefits, the Court cannot evaluate whether the trustees violated the statute without first determining whether the suspension was warranted; and the Court cannot possibly ascertain whether the suspension was proper without analyzing the terms of the Plan. Plaintiff himself implicitly recognizes this fact. Indeed, he devotes ten paragraphs of his amended complaint – and a substantial portion of his brief – to interpreting the terms of the Plan and explaining why defendants' actions contravened those terms. (*See* Am. Compl. ¶¶ 19–29; Pl.'s Opp'n at 8–11.) Moreover, plaintiff directly disputes defendants' interpretation of the Plan, which looked to "the nature of the [p]laintiff's work" instead of merely "examining the industry in which the [p]laintiff was employed." (Am. Compl. ¶ 27.) This is a significant exercise in interpretation for a Plan that plaintiff argues requires no interpretation at all.

---

[9] Plaintiff argues that defendants' alleged disregard of the plain terms of the Plan "is further evidenced by a recent letter which [d]efendants sent to [plaintiff] . . . containing a summary plan document that communicates an incorrect recitation of what the Plan actually stated." (Pl.'s Opp'n at 9; Meisner Aff., Ex. E.) The amended complaint, however, contains no allegations that relate to this letter, nor was the letter attached to plaintiff's pleadings. (*See* Doc. No. 25.) Moreover, it is unclear how the letter – which was sent six months *after* this action was filed – could bear on the conduct forming the basis of this suit. "Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *SocketWorks*, 265 F.R.D. at 122 (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). The letter referenced by plaintiff is extrinsic to the pleadings and the Court declines, at this stage in the litigation, to convert the motion to dismiss to a motion for summary judgment. *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *Tand v. Solomon Schechter Day Sch. of Nassau Cnty.*, 324 F. Supp. 2d 379, 382 (E.D.N.Y. 2004).

Claims that require such close analysis of the terms of a plan to determine an individual entitlement to benefits allege a violation of the plan's terms, not ERISA. *See Am. Med. Ass'n*, 2007 WL 1771498, at *15 (observing that the "prevailing rule" holds that "bona fide breach of fiduciary duty claims" do not include "claims for benefits artfully pled as claims for breach of fiduciary duty"). Because plaintiff "advances a breach of fiduciary duty claim by which he clearly seeks only to receive benefits under his [] Plan," *Role*, 2008 WL 465574, at *4, plaintiff was required to exhaust his administrative remedies prior to bringing suit in federal court. *Cf. Spann*, 219 F.R.D. at 322. Indeed, all of the *Nechis* factors weigh in favor of requiring exhaustion in this case. *See* 421 F.3d at 102. The trustees of the Plan cannot fairly be held accountable for final decisions regarding plaintiff's benefits where they have not been given an opportunity to review plaintiff's claim in accordance with the established procedures under the Plan. Moreover, plaintiff's withdrawal of his appeal means that this Court must proceed with *no* administrative record, let alone one that is "sufficiently clear." *Id.* And judicial review would subject fiduciary action to *de novo* review, bypassing determinations concerning plaintiff's claim that are committed to the discretion of the Plan's trustees.

Plaintiff's argument also assumes both that defendants interpreted the Plan erroneously and that the correct interpretation in this case is so straightforward as to preclude the exercise of discretion on the part of the trustees. The Court notes, however, that those assumptions fly in the face of governing authority. Where a plan grants fiduciaries discretionary authority to determine eligibility for benefits, as this Plan does, the Court must instead apply a deferential standard of review. *See Glenn*, 554 U.S. at 111; *Zarringhalam*, 906 F. Supp. 2d at 155. Such deference protects the interests of employers "by permitting an employer to grant primary interpretive authority over an ERISA plan to the plan administrator," "promotes efficiency by encouraging

resolution of benefits disputes through internal administrative proceedings rather than costly litigation," and "promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from *de novo* judicial review." *Conkright*, 559 U.S. at 517. As such, the Court would be bound to accept the trustees' interpretation of the plan unless it was unreasonable. *See id.* at 521; *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 130 (2d Cir. 2008); *Zarringhalam*, 906 F. Supp. 2d at 155. For the reasons explained above, however, the Court need not reach that issue.

Plaintiff's final argument is that this action cannot be reduced to a claim for benefits because he seeks equitable relief. Specifically, plaintiff requests an injunction ordering defendants to comply with all Plan documents and awarding him all benefits withheld, as well as interest, costs, and attorneys' fees.[10] (Am. Compl. at 13–14.) But although "district courts in this Circuit have interpreted the Supreme Court's ruling in *CIGNA* to permit monetary relief under [section] 502(a)(3) in certain cases," *D'Iorio*, 920 F. Supp. 2d at 321, the mere *availability* of such relief under section 502(a)(3) does not immunize plaintiff's failure to exhaust his administrative remedies.[11] Plaintiff also cites *Sereboff v. Mid Atlantic Medical Services, Inc.*,

---

[10] Merely including a prayer for injunctive relief does not obfuscate the fact that plaintiff essentially seeks a money judgment. *See Coan v. Kaufman*, 457 F.3d 250, 264 (2d Cir. 2006) ("[T]he alternative relief [plaintiff] seeks under section 502(a)(3), an injunction requiring the defendants to restore funds to the defunct 401(k) plan to be distributed to former participants, 'does not transform what is effectively a money damages request into equitable relief.'"). Thus, it is unclear that equitable relief would be available in this case. *See Nechis*, 421 F.3d at 103 (finding that a plaintiff could not "satisfy the conditions required for injunctive relief" because "any harm to her can be compensated by money damages, and she could have pursued an alternative and effective remedy under [section] 502(a)(1)(B) of ERISA to recover the value of benefits wrongly denied"); *Gates v. United Health Grp. Inc.*, No. 11-CV-3487 (KBF), 2012 WL 2953050, at *10 n.10 (S.D.N.Y. July 16, 2012) (stating that "because any harm plaintiff suffered as a result of defendants' determination of her benefits may be adequately compensated by the monetary relief she seeks under ERISA [s]ection 502(a)(1)(B), the equitable portion of her first cause of action is dismissed").

[11] Plaintiffs in comparable cases appear to have either exhausted their administrative remedies or alleged statutory violations independent of an individual benefits determination. *See, e.g.*, *D'Iorio*, 920 F. Supp. 2d at 322 (alleging a breach of fiduciary duty based on a "failure to disclose plan documents and [] affirmative and/or negligent misrepresentation of benefits"); *Laurent*, 2013 WL 4028181, at *16–17 (alleging fiduciary violations premised on the statutory requirements to provide a summary plan description); *Miller v. Int'l Paper Co.*, No. 12-CV-7071 (LAK) (JLC), 2013 WL 3833038, at *2 (S.D.N.Y. July 24, 2013) (bringing an action for fiduciary violations after exhausting administrative remedies); *Osberg v. Foot Locker, Inc.*, 907 F. Supp. 2d 527, 534 (S.D.N.Y. 2012)

547 U.S. 356 (2006), to suggest that his "case for characterizing [his] relief as equitable . . . does not falter because of the nature of the recovery [he] seeks." *Id.* at 363. That case is inapposite here. *Sereboff* did not involve a dispute over a beneficiary's entitlement to benefits under the terms of a plan. Moreover, the respondent in *Sereboff* "sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [petitioner]s' assets generally . . . ." *Id.* Thus, unlike plaintiff, the respondent in *Sereboff* did not seek to "to impose personal liability for a contractual obligation to pay money." *Id.* at 363 (quoting *Knudson*, 534 U.S. at 210) (internal alteration omitted).

### B. Futility

The Court next considers whether plaintiff's failure to exhaust may be excused. Plaintiff argues that he should be excused from the requirement because any attempt to obtain review under the Plan would have been futile.[12] (*See* Am. Compl. ¶ 47; Pl.'s Opp'n at 17–20.) "Where claimants make a 'clear and positive showing' that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement." *Kennedy*, 989 F.2d at 594 (citing *Fizer v. Safeway Stores*, 586 F.2d 182, 183 (10th Cir. 1978)). Futility is generally pled by alleging (1) "an unambiguous application for benefits," (2) "a formal or informal administrative decision denying benefits," and (3) that "it is clear that seeking further administrative review of the decision would be futile." *Barnett v. Int'l Bus. Machines Corp.*, 885 F. Supp. 581, 588 (S.D.N.Y. 1995) (citing *Ludwig v. NYNEX Serv. Co., et al.*, 838 F. Supp. 769, 782 (S.D.N.Y.

---

(alleging fiduciary violations premised on faulty statutory disclosures); *Gates*, 2012 WL 2953050, at *3–5 (bringing an action for fiduciary violations after exhausting administrative remedies); *Mcguigan*, 2011 WL 3421318, at *4 (alleging fiduciary violations of statutory disclosure provisions).

[12] Defendants are curiously adamant that plaintiff never mentioned futility in his pleadings. (Defs.' Mem. in Supp. at 17 n.18; Defs.' Reply at 6.) However, futility was clearly (albeit cursorily) alleged in the amended complaint. (*See* Am. Compl. ¶ 47.)

1993)).  When considering whether to excuse a failure to exhaust under this exception, the Court

must remain mindful of the primary purposes of exhaustion that the Second Circuit identified in

*Nechis*.  421 F.3d at 102; *see also Kennedy*, 989 F.2d at 594 (quoting *Denton v. First Nat'l Bank

*of Waco, Texas*, 765 F.2d 1295 (5th Cir.), *reh'g denied*, 772 F.2d 904 (5th Cir. 1985)).

Plaintiff has failed to plead futility in this case.  In most cases, "some record for review

has been established" that "excuses the plaintiff from clearly unproductive efforts because no

further purpose would be served by requiring further exhaustion."  *Barnett*, 885 F. Supp. at 588.

Here, plaintiff's decision to withdraw his appeal prior to any hearing or other formal

administrative review, however, leaves this Court bereft of "a sufficiently clear record of

administrative action to support effective judicial review and it is difficult, if not impossible, for

a court to apply an arbitrary and capricious standard of review rather than engaging in review *de

novo*."  *Id.*  Cases involving "an informal or unsubstantiated denial of a 'claim' that was never

filed or formally presented," therefore, improperly make "the courts and not ERISA trustees . . .

primarily responsible for deciding claims for benefits."  *Id.*

So it is here.  Plaintiff's amended complaint does not allege anything approaching a

clear and positive showing that pursuing his administrative remedies would have been futile.

Instead, it contains a single *pro forma* allegation.  (*See* Am. Compl. ¶ 47.)  Indeed, the facts of

this case – even viewed in the light most favorable to plaintiff – undercut his claim of futility.

Plaintiff did, in fact, request a formal review of the trustees' decision to suspend his benefits but

chose to withdraw his appeal before presenting his case at a meeting of the Board of Trustees.[13]

---

[13] In his letter, plaintiff gave three reasons for withdrawing his appeal: (1) defendants' refusal to provide plaintiff with certain documents that he had requested; (2) Fernandez's allegedly impermissible involvement in the process; and (3) the Board of Trustees' alleged "disregard" of the terms of the Plan.  (*See* Meisner Aff., Ex. D.)  These conclusory and self-serving reasons, however, are not alleged anywhere in the amended complaint.  Likewise, plaintiff failed to allege any facts tending to support his stated reasons or explain why those reasons justified withdrawal of his appeal.

(*See* Meisner Aff., Ex. D.)  In doing so, plaintiff stated his intention to "seek reinstatement of his

pension benefit in Federal Court without exhausting the administrative appeal process," while

still contemplating an "appeal for benefits . . . at a later date."  (*Id.*)  A bare preference for federal

review does not demonstrate the futility of the administrative remedies under the Plan, and

plaintiff's attempt to reserve his right to avail himself of those same remedies in the future

implies that he did not consider the administrative process to be futile.  Exhaustion serves to

"help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment

of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize

the costs of claims settlement for all concerned."  *Kennedy*, 989 F.2d at 594 (quoting *Amato v.

Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)).  Endorsing plaintiff's circumvention of the Plan's

administrative process would undermine those goals and frustrate the framework envisioned by

Congress.  Plaintiff's allegations that defendants did not respond to his missives "alerting" them

of their supposed breaches also fail to demonstrate futility, (*see* Pl.'s Opp'n at 18–19), as such

informal notifications do not constitute an unambiguous application for benefits and a failure to

respond cannot be deemed an administrative denial.  *See Shamoun*, 357 F. Supp. 2d at 606–07

(citing *Davenport*, 249 F.3d at 133) (finding that a plaintiff had failed to demonstrate futility

"based on letters between his counsel and the Fund concerning the alleged unfair administration

of the Plan"); *cf. Preston v. Am. Fed'n of Television & Radio Artists*, No. 90-CV-7094 (RJW),

2002 WL 1009458 (S.D.N.Y. May 16, 2002), *aff'd sub nom. Preston v. Am. Fed'n of Television

& Radio Artists Health Fund*, 63 F. App'x 536 (2d Cir. 2003).

 "Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

'detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions . . . .'"  *Pearson v. Pathmark Stores, Inc.*, No.

07-CV-2183 (NG) (LB), 2008 WL 2439713, at *1 (E.D.N.Y. June 17, 2008) (quoting *Twombly*, 550 U.S. at 555). Here, plaintiff has failed to allege that any attempt to pursue an administrative remedy would have been "clearly unproductive" or served "no further purpose." *Barnett*, 885 F. Supp. at 588. Moreover, excusing plaintiff's failure to exhaust would encourage other "plaintiffs to sue upon the mere pleading of a *de facto* denial of an unfiled claim, would discourage settlement of claims, and would likely increase the costs of claims settlement." *Id.* The Court therefore concludes that plaintiff has failed to demonstrate that pursuing his administrative remedies under the Plan would have been futile. As such, plaintiff's failure to exhaust those remedies cannot be excused and his fiduciary claims must be dismissed.[14]

## II. Retaliation by Defendant Fernandez (Claim Four)

Plaintiff next alleges that Fernandez discontinued plaintiff's pension benefits in retaliation for plaintiff's previous attempts to protect the Plan from funding failures and for plaintiff's challenge to his termination in 2005. (*See* Am. Compl. ¶¶ 48–71.) According to the amended complaint, sometime during the period from 2000 to 2005, Fernandez developed a dislike of plaintiff that led Fernandez to cause or bring about the suspension of plaintiff's benefits in 2012. Plaintiff urges that this conduct violates section 510 of ERISA, which provides, in relevant part, that

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . [or] to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter . . . .

---

[14] In appropriate cases, the exhaustion requirement may also be subject to waiver, estoppel, and other "similar equitable considerations." *Paese*, 449 F.3d at 439. Plaintiff, however, did not advance any other bases for excusing his failure to exhaust, and the Court does not discern any other equitable considerations applicable in this case.

29 U.S.C. § 1140.

"Section 510 was designed primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'" *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (quoting *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980)). Defendants argue, therefore, that no claim for retaliation can lie where the employer-employee relationship has ceased. But other courts have held that in some cases "[s]ection 510 should be read to cover post-employment retaliation." *Kreinik v. Showbran Photo, Inc.*, No. 02-CV-1172 (RMB) (DF), 2003 WL 22339268, at *5 (S.D.N.Y. Oct. 14, 2003); *see also Thompson v. Morris Heights Health Ctr.*, No. 09-CV-7239 (PAE) (THK), 2012 WL 1145964, at *6 (S.D.N.Y. Apr. 6, 2012). Additionally, contrary to defendants' assertions, ERISA does confer upon the Court the authority to remove a plan fiduciary under certain circumstances. *See* 29 U.S.C. § 1109(a) (providing for "equitable or remedial relief . . . including removal of [a] fiduciary"); *see also Chao v. Merino*, 452 F.3d 174, 185 (2d Cir. 2006). The Court need not reach these issues, however, as plaintiff has failed to plead a plausible section 510 claim.

Unlike the first three claims, plaintiff's claim as to Fernandez does implicate a true statutory violation of ERISA.[15] The Court notes, however, that plaintiff does not allege a traditional retaliation claim. *See Nicolaou v. Horizon Media, Inc.*, 402 F.3d 325, 326 (2d Cir. 2005) (alleging wrongful termination after an employee participated in internal investigation of possible ERISA violations by her employer and informed her employer of her belief that its ERISA plan was underfunded). Plaintiff does not allege, for instance, that the conduct at issue

---

[15] Because it concerns a statutory violation of ERISA and seeks injunctive relief, this claim would be exempt from the exhaustion requirement if properly pled. *See De Pace*, 257 F. Supp. 2d at 558 (noting that courts in the Second Circuit "have repudiated the exhaustion doctrine as a prerequisite to statutory ERISA claims in the context of § 510 violations"); *Novak v. TRW, Inc.*, 822 F. Supp. 963, 969 (E.D.N.Y. 1993) (same).

culminated in any adverse employment consequence, such as termination or demotion, in retaliation for plaintiff's exercise of rights protected under ERISA. Rather, plaintiff argues that Fernandez retaliated against him by suspending his benefits several years *after* plaintiff was actually terminated. In other words, Fernandez's dispute with plaintiff in 2005 allegedly led Fernandez to suspend plaintiff's benefits in 2012 – more than seven years after plaintiff's termination and the alleged dispute.[16] (*See* Am. Compl. ¶¶ 32–39.)

Plaintiff's theory of retaliation is implausible, to say the least. To succeed on this claim, plaintiff must show that his employer was motivated, at least in part, by a specific intent to engage in activity prohibited by section 510. *Dister*, 859 F.2d at 1111 (citing *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.), *cert. denied*, 484 U.S. 979 (1987)); *Titsch v. Reliance Group, Inc.*, 548 F. Supp. 983, 985 (S.D.N.Y. 1982), *aff'd*, 742 F.2d 1441 (2d Cir. 1983)). Plaintiff attempts to sustain his burden as to this element by alleging that Fernandez felt "animosity" toward plaintiff in 2005, and that "this hatred may have carried forward to today." (Pl.'s Opp'n at 22.) But plaintiff fails to allege anything beyond the barest facts of his 2005 termination, resting solely "[u]pon information and belief." (Am. Compl. ¶ 39.) Indeed, plaintiff fails even to allege any facts concerning the dispute over his termination, the actions either party took to resolve that dispute, or the eventual outcome – all of which are facts crucial to plaintiff's theory of retaliation.

The seven-year period between plaintiff's termination and the alleged retaliatory conduct also severely undermines the plausibility of plaintiff's claim. *See Perry v. NYSARC, Inc.*, 424 F.

---

[16] Although this is the theory set forth in the amended complaint, plaintiff's opposition papers present a more muddled argument that could be read to suggest that plaintiff was *terminated* for the purpose of interfering with his rights under ERISA. (*See* Pl.'s Opp'n at 22–23.) Such a theory is flawed, however, as plaintiff does not allege any loss of rights prior to 2012. In any event, a plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss." *Thomas v. City of New York*, No. 12-CV-5061 (FB) (SMG), 2013 WL 3810217, at *3 (E.D.N.Y. July 23, 2013) (quoting *Miley v. Hous. Auth. of City of Bridgeport*, No. 12-CV-519 (VLB), 2013 WL 676105, at *9 (D. Conn. Feb. 25, 2013)).

App'x 23, 26 (2d Cir. 2011) (observing that "a four-month interval between protected activity and alleged retaliation" could not support an inference of causality); *Dillon v. Suffolk Cnty. Dep't of Health Servs.*, 917 F. Supp. 2d 196, 214 (E.D.N.Y. 2013) (quoting *Flood v. UBS Global Asset Mgmt.*, No. 10-CV-374, 2012 WL 288041, at *17 (S.D.N.Y. Feb. 1, 2012)) ("[C]ourts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation."). The amended complaint does not contain any allegations concerning any actions by any defendant during the seven-year interim period. Thus, plaintiff's retaliation claim is grounded entirely on a supposed grudge held by Fernandez for seven years following a cryptic employment dispute, the facts of which were not provided, but which was allegedly so serious as to motivate Fernandez purposefully to violate ERISA. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686. At best, plaintiff's speculative allegations are "merely consistent with" Fernandez's liability, stopping far short of "the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S at 557; *see also Iqbal*, 556 U.S. at 678.

Although allegations need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), the federal rules do "oblige[] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (internal citation omitted) (emphasis in original). In light of plaintiff's tenuous theory of retaliation, the utter lack of any factual allegations to support that theory, and the significant temporal gap between plaintiff's termination and the alleged retaliatory conduct, plaintiff's "[t]hreadbare recitals . . . , supported

by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Accordingly, plaintiff's fourth cause of action must be dismissed.

## III.    Request to Compel Discovery (Claim Five)

Finally, the amended complaint seeks an order compelling discovery of "certain documents and instruments relating to the Pension Plan" that were identified in "a letter sent to the Trustee Defendants" on July 2, 2012. (Am. Compl. ¶ 40.) Plaintiff alleges that defendants refused to provide "certain of the requested documents, including certain documents that [p]laintiff is entitled to obtain" under section 104(b)(4), and he seeks statutory penalties pursuant to section 502(c). (*Id.* ¶ 41; *see also id.* pp. 14–15.) Plaintiff alleges that defendants have ignored multiple requests for these documents. (*Id.* ¶ 43.) Defendants respond that ERISA does not require them to produce the documents demanded by plaintiff.

Section 104(b)(4) provides that

> The administrator [of a fund] shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). Plaintiff laments defendants' failure to provide "[i]tems 4, 5, and 6 of [p]laintiff's requests" for production. (Pl.'s Opp'n at 25.) Unhelpfully, plaintiff never states what documents were withheld. Defendants fill in the blanks by referring to a letter dated July 2, 2012, which was appended to the affidavit submitted by Fernandez.[17] (*See* Fernandez Aff., Ex. B.) Items 4 through 6 reference, respectively, "[c]opies of the Board minutes for any meeting at which [plaintiff's] claim for benefits was discussed," "[p]roof that the Fund Administrator has communicated and/or sent to the Board of Trustees . . . the entire contents of [plaintiff's] letter

---

[17] Once again plaintiff failed to attach this letter to his amended complaint, but his obvious reliance on its contents allows its consideration by the Court on this motion. *See Allen*, 945 F.2d at 44.

dated June 26, 2012," and "[c]opies of all prior benefit claims and appeals and all Board of Trustees minutes in which a determination of what constitutes 'Disqualifying Employment' was made." (*Id.*; *see also* Defs.' Reply at 9.)  Plaintiff has failed to demonstrate any entitlement to these documents.

"Congress intentionally fashioned [section] 104(b)(4) to limit the categories of documents that administrators must disclose on demand of plan participants."  *Bilello v. JPMorgan Chase Ret. Plan*, 649 F. Supp. 2d 142, 168 (S.D.N.Y. 2009) (quoting *Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 147 (2d Cir. 1997)).  Consequently, "ERISA does not require plan officials to furnish information other than that specified by statute."  *Gruby v. Brady*, 838 F. Supp. 820, 832 (S.D.N.Y. 1993).  None of the withheld items are explicitly listed in section 104(b)(4), and plaintiff does not cite any case that otherwise establishes an entitlement to the documents.  Additionally, "[n]either ERISA nor the federal regulations issued thereunder make any mention of any requirement that plan participants be allowed to see the minutes of trustees' meetings or prior decisions by the trustees."  *Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F. Supp. 1430, 1456 (S.D.N.Y. 1983).  Plaintiff does cite to 29 C.F.R. § 2560.503-1, which "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries . . . ."  *Id.* § 2560.503-1(a).  Plaintiff is presumably referring to the section of that regulation that provides

> In the case of an adverse benefit determination . . . [i]f an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request . . . .

*Id.* § 2560.503-1(g)(v).  On its face, however, that regulation does not establish an entitlement to any of the documents plaintiff requested.  Nor does plaintiff cite any authority so interpreting the regulation.  As such, plaintiff has no entitlement to the requested documents under section 104(b)(4), and his fifth cause of action is dismissed.

## CONCLUSION

For the foregoing reasons, the amended complaint fails to state a claim for which relief can be granted.  Accordingly, defendants' motion to dismiss (Doc. No. 30) is granted.  The Clerk of Court is directed to terminate the motion and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      February 7, 2014

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge